**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

BENJAMIN CUTLIP,

        Petitioner,       :    Case No. 2:23-cv-2574

  - vs -                          District Judge Edmund A. Sargus, Jr.
                                       Magistrate Judge Michael R. Merz

WARDEN, Correctional Reception
  Center,

                                            :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus action, brought *pro se* by Petitioner Benjamin Cutlip under § 28 U.S.C. 2254, is before the Court for decision on the merits. Relevant filings are the Petition (ECF No. 1), the State Court Record (ECF No. 9), the Return of Writ (ECF No. 10) and Petitioner's Reply (ECF No. 17). Also pending for decision is Petitioner's Motion to Supplement the Record (ECF No. 16).

**Litigation History**

On September 2, 2020, a Belmont County grand jury indicted Petitioner on three charges: aggravated trafficking in drugs with forfeiture and major offender specifications (Count One), aggravated possession of drugs with a major offender specification (Count Two), and aggravated trafficking in drugs with a forfeiture specification (Count Three)(Indictment, State Court Record,

ECF No. 9, Ex. 1).

On January 21, 2021, the trial court overruled a number of defense motions, including a motion to suppress. *Id.* at Ex. 14.  A petit jury found Petitioner guilty on all counts and he was sentenced to fourteen to nineteen and one-half years imprisonment (Judgment, State Court Record, ECF No. 9, Ex. 17).  Petitioner then appealed to the Ohio Seventh District Court of Appeals.  That court affirmed the conviction and sentence.  *State v. Cutlip,* 2022 Ohio 3524 (Ohio App. 7th Dist. Sept. 30, 2022).  The Ohio Supreme Court declined to exercise further appellate jurisdiction. *State v. Cutlip,* 169 Ohio St. 3d 1424 (2023).

On January 11, 2023, Petitioner filed an Application to Reopen the direct appeal under Ohio R. App. P. 26(B), the correct method for raising claims of ineffective assistance of appellate counsel. The Seventh District denied the Application on grounds it was untimely and alternatively on the merits.  *State v. Cutlip*, 2023-Ohio-914 (Ohio App. 7th Dist. Mar. 21, 2023).  The Ohio Supreme Court declined to exercise further appellate jurisdiction. *State v. Cutlip*, 170 Ohio St. 3d 1481 (July 5, 2023).

Petitioner filed his Petition in this Court on August 8, 2023[1], pleading the following grounds for relief:

> **Ground One**: Ineffective assistance of counsel in violation of the Sixth Amendment.
>
> **Supporting Facts:** Whether applicant was deprived of the effective assistance of counsel on appeal where, under the first assignment of error: lacked probable cause to issue search warrant, counsel failed to point to other findings in the record demonstrating how the trial court erred and why the search warrant affidavit lacked probable cause.
>
> **Ground Two**: Potential juror's damaging statement denied petitioner his Sixth Amendment right to an impartial jury.

---

[1] Petitioner declares he deposited his Petition in the prison mail system on that date.

**Supporting Facts:** Potential juror stated during voir dire that he had arrested appellant several. (sic)

**Ground Three**: Insufficient evidence under the Due Process clause of the Fifth Amendment.

**Supporting Facts:** Petitioner's conviction for trafficking (count 1) was unsupported by sufficient evidence.

**Ground Four**: Judge invaded the province of the jury in violation of the due process (sic) under the Sixth Amendment.

**Supporting Facts:** The trial court responded to a jury question, after closing arguments during deliberations.

**Ground Five**: ineffective assistance of trial counsel in violation of the Sixth Amendment.

**Supporting Facts**: Counsel failed to file a financial affidavit with the motion to waive fines, had he done so a reasonable probability exist[s] the proceeding would have been different.

**Ground Six** (2ND #FIVE): Lack of probable cause to issue the search warrant in violation of the Fourth Amendment.

**Supporting Facts**: The trial court lack (sic) probable cause to issue the warrant that led to the search of the camper for two reasons: (sic)

(Petition, ECF No. 1).

# Analysis

**Ground One:  Ineffective Assistance of Appellate Counsel**

In his First Ground for Relief, Petitioner argues he received ineffective assistance of appellate counsel when his appellate attorney did not correctly argue his First Assignment of Error regarding Fourth Amendment violations.

Respondent asserts merits review of this Ground for Relief is barred by procedural default: Petitioner's untimely filing of his 26(B) Application.

3

In his Reply, Petitioner first concedes that he has procedurally defaulted Ground One, but then claims "that the default must be set aside." (Reply, ECF No. 17, PageID 852). He argues:

> "A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." *Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. " *Murray v. Carrier,* 477 U.S. 478, 488, 106 S. Ct. 2639, 91L. Ed. 2d 397 (1986).

*Id.* at PageID 853. This argument is correct as far as it goes, but Petitioner, instead of presenting some "objective factor external to the defense," proceeds instead to argue the merits of his ineffective assistance of appellate counsel claim. *Id.* at PageID 753-57.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default*. Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Applying the required *Maupin* analysis, the Magistrate Judge notes that Ohio does have a relevant procedural rule which places a ninety-day time limit on filing applications for reopening. The Seventh District Court of Appeals enforced that rule by dismissing Petitioner's 26(B) application as untimely.  "A procedural rule is adequate only when it is firmly established and regularly followed at the time it was applied." *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) *citing Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003).  However, the Sixth Circuit has held the time limit on 26(B) applications is firmly established and regularly followed. *Hoffner v. Bradshaw*, 622 F.3d 487, 504-505 (6th Cir. 2010). Petitioner has offered no cause and prejudice to excuse his failure to file on time.  Ground One should therefore be dismissed with prejudice as procedurally defaulted.

**Ground Two:  Sixth Amendment:  Denial of an Impartial Jury**

In his Second Ground for Relief Petitioner claims he was denied an impartial jury because one of the veniremen commented during voir dire that he has arrested Cutlip on several occasions in the past.  Cutlip presented this claim as his Second Assignment of Error on direct appeal and

5

the Seventh District decided it as follows:

> [*P57] Appellant's second assignment of error asserts:
>
> "The trial court erred by overruling Appellant's motion for a mistrial when a potential juror stated during voir dire that he had arrested Appellant several times."
>
> [*P58] Appellant asserts he was denied his Sixth Amendment Right to an impartial jury based on the potential juror's derogatory statement about him at the beginning of the proceedings. He claims the trial court abused its discretion by not declaring a mistrial.
>
> [*P59] A mistrial is appropriate when the substantial rights of the accused or prosecution are adversely affected making a fair trial no longer possible. *Illinois v. Somerville,* 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L. Ed. 2d 425 (1973); *State v. Franklin,* 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). The decision to grant a mistrial "is an extreme remedy only warranted in circumstances where a fair trial is no longer possible and it is required to meet the ends of justice." *State v. Jones,* 83 Ohio App.3d 723, 615 N.E.2d 713 (2d Dist.1992).
>
> [*P60] Because the trial court is afforded broad discretion upon considering a motion for a mistrial, we review that decision for an abuse of discretion. *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus.
>
> [*P61] During the initial questioning of the jury pool at the beginning of voir dire, the judge asked if any of the potential jurors were acquainted with the parties. One juror raised his hand indicating he knew the defendant. A while later, while speaking directly to this potential juror in the presence of the other potential jurors, the following exchange took place:
>
>> THE COURT: All right. Mr. Burns, * * * I believe the first [issue] was you had an acquaintance with the case and/or the parties?
>>
>> PROSPECTIVE JUROR BURNS: Yes.
>>
>> THE COURT: And how's that? I don't want you to go into details about what you know, just how you know.
>>
>> PROSPECTIVE JUROR BURNS: As [a] former police officer, I've arrested the defendant on several occasions.

6

[*P62]  Counsel and the judge immediately conducted a sidebar conference out of the presence of the jury, and Appellant's attorney asked for a mistrial or in the alternative, for a curative instruction directing the jury to disregard Mr. Burns' statement. The state agreed a curative instruction was appropriate, and the court directly thereafter addressed the jury pool and stated:

> Mr. Burns has just indicated a prior relationship or interaction with Mr. Cutlip. You are to disregard that comment. Remember, I told you earlier, you decide guilt or innocence based on the evidence that you hear from the witness stand, that you see from the witness—as presented by the witnesses. So you are to disregard the comment by Mr. Burns or the answer to the question that he gave. That is to have no impact whatsoever upon anything else that occurs during the trial of this case.

The court then excused Mr. Burns as a potential juror and immediately proceeded to address a different prospective juror. (Trial Tr. 12, 27-30.)

[*P63]  As stated, Appellant claims it was an abuse of discretion not to grant a mistrial based on Mr. Burns' statement. Alternatively, he contends the court should have individually polled the jurors to ensure their impartiality was not tainted by his statement.

[*P64]  The Ohio Supreme Court in *State v. Garner* , 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623 (1995) addressed a comparable issue. In *Garner*, a police investigator inadvertently testified during trial the defendant had been previously arrested. The officer said in part upon researching the phone number associated with a certain address, "it came back [to] William Garner using that address in one of his arrests." (Emphasis added.) The officer essentially told the jurors Garner had been arrested at least twice. Garner's attorney objected to this reference and moved for a mistrial. The court overruled the motion but sustained the objection to this line of testimony. It immediately instructed the jury to disregard the officer's statement. *Id.* at 58. On appeal, the Supreme Court upheld the decision denying the motion for mistrial. It held there was no abuse of discretion because the reference to the defendant's prior arrests was fleeting and promptly followed by curative instructions. *Id.*

[*P65]  This court reached the same outcome in another case. In *State v. Loterbaugh,* 7th Dist. Carroll No. 19 CA 0931, 2020-Ohio-

7

1104, we found the defendant was not denied a fair trial based on his mother's inadvertent statement during her testimony that the defendant (her son) had previously been in jail. We noted the reference was brief, isolated, and did not unfairly prejudice the defendant. *Id.* at ¶ 57-58.

[*P66]  Consistent with *Garner* and *Loterbaugh*, the potential juror's statement about arresting Appellant in this case was limited in duration and detail. It provided no information about Appellant's prior arrests or what the alleged offenses were, and the trial court's curative instruction was given immediately and before the court began addressing another potential juror. The trial court also swiftly overruled Appellant's motion for a mistrial, and discharged Mr. Burns as a potential juror.

[*P67]  When the jury was selected and after they entered the courtroom together for the first time, the court reminded the jurors they had not yet heard any evidence in the case and all of the preliminary jury selection comments and questions were not evidence in this case. (Trial Tr. 165.) The jurors verified they would abide by the court's instructions, apply the law, and limit their determination to only the evidence presented at trial.

[*P68]  And the Supreme Court has held, "[i]f an error occurs, such as the jury hearing improper testimony, the 'jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.'" *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 89, quoting *Garner, supra,* 59. Thus, we presume the jurors disregarded Mr. Burns' statement during voir dire.

[*P69]  Moreover, Officer Duplaga testified during trial that he asked Durbin if he could act as an informant on Appellant. Durbin said he would try and he had met Appellant while the two were in jail together. (Trial Tr. 307-308.) Thus, evidence Appellant had previously been arrested was before the jury thereby reducing any affect [sic] Mr. Burns' statement may have had.

[*P70]  Appellant contends the court should have polled the jurors to ensure each was able to perform their role as impartial jurors and disregard the comment during the proceedings. While this may have helped ensure the jurors understood their obligation, the questioning proposed by Appellant may have highlighted the substance of Mr. Burns' statement, and the repetition of it may have amplified the alleged damage.

8

> [*P71] Based on the foregoing, the trial court did not abuse its discretion by overruling Appellant's motion for a mistrial, and Appellant had a fair trial notwithstanding the potential juror's comment. This assignment of error lacks merit.

*State v. Cutlip,* 2022 Ohio 3524 (Ohio App. 7th Dist. Sept. 30, 2022).

Respondent defends on Ground Two on the merits and by asserting that review of a state court's discretionary decision is not cognizable in habeas corpus (Return of Writ, ECF No. 10, PageID 772-74). Petitioner does not respond to the non-cognizability argument and asserts on the merits that the voir dire was not thorough enough (Reply, ECF No. 17, PageID 857-61).

If Petitioner were asking this Court to review the Seventh District's decision or the underlying trial court decision for an abuse of discretion, that claim would indeed not be cognizable. A claim of abuse of discretion by a state court judge is not sufficient to state a constitutional violation. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

However, Petitioner's claim is not that either of those courts abused it discretion, but that the trial court permitted the jury to return a verdict without sufficient guarantees that it was impartial. Under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), when a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000) *Hendrix v. Palmer,* 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

There is no indication in the record of any prosecutorial misconduct[2] leading to the potentially prejudicial comment; it was apparently unexpected, but responsive to the question about acquaintance with Petitioner. One the response had been volunteered, the trial judge had several possible responses. Although a mistrial was one, a curative instruction was another, far less costly to the system in terms of both expense and delay. When the choice was put to counsel, Petitioner's attorney offered the judge the choice of a mistrial or a curative instruction. *Cutlip, supra*, at ¶ 62. The judge gave a curative instruction to which neither party objected. On appeal, Petitioner's counsel argued that there should have been a mistrial or an individual poll of the jury about impact of the statement. *Id.* at ¶ 63. But there is no record of trial counsel's having asked for a poll and he agreed to the creative instruction. As the Seventh District noted, conducting an individual poll would probably have exaggerated the importance of the comment. As the Seventh District also indicated, the content of the remark was bland; the "arrests" could have been simple traffic violation stops.

In his Reply, Petitioner argues "[t]he failure to address Burn's history of arresting the defendant during the voir dire raises concerns about the potential bias and impartiality, violating Cutlip's right to a fair and impartial trial" (Reply, ECF No. 17, PageID 860).

Petitioner cites *Morgan v. Illinois,* 504 U.S. 719 (1992), in which the Supreme Court regulated the scope of voir dire in capital trials. *Morgan* is not apposite. First of all, Morgan was a capital case and capital jurisprudence is not directly applicable to non-capital cases. "Death is different" as the Supreme Court has reminded us with its persistent citation of *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). But more directly, this is not a case where a person whose

---

If a prosecutor were attempting to avoid the rule against evidence of prior bad acts and knew that a potential juror would answer as this venireman did, one might have a basis for a prosecutorial misconduct claim, but there is no evidence here to support such a claim.

impartiality could reasonable be questioned was actually seated. Potential juror Burns was excused immediately for cause as soon as he volunteered his comment. The other jurors were given a curative instruction and then asked if they could limit their consideration to the evidence alone. In sum, Petitioner has cited no Supreme Court precedent requiring a mistrial under parallel circumstances. *Zafiro v. United States*, 506 U.S. 534 (1993), which he does cite, does not concern juror prejudice but possible prejudice resulting from failure to sever. Petitioner criticizes the Seventh District's reliance on presumptions, but he offers no evidence to overcome the presumption that the jury followed the curative instruction.

The Seventh District's decision is not an unreasonable application of Supreme Court precedent and thus is entitled to deference. Ground Two should be dismissed with prejudice.

**Ground Three: Conviction Upon Insufficient Evidence**

In his Third Ground for Relief, Petitioner claims that insufficient evidence was presented to the jury to justify its verdict. Respondent defends this claim on the merits, relying on the authority of *Jackson v. Virginia*, 443 U.S. 307 (1979). Petitioner replies by questioning inferences on which the jury would have had to rely and asserting as the controlling law "the nuanced standard of review outlined in *Thomas v Stephenson,* 989 F. 3d 693, 698 (6 Cir. 2018), for federal Habeas cases challenges the sufficiency of evidence under the AEDPA" (Reply, ECF No. 17, PageID 864).

The Seventh District considered this claim is deciding Petitioner's Fourth Assignment or Error as follows:

> **Fourth Assignment of Error: Insufficient Evidence**
>
> "Appellant's conviction for trafficking (Count 1) was unsupported by sufficient evidence."

11

{¶95} Appellant asserts there was insufficient evidence to convict for count one, contending the only way to reach the finding was to stack an inference upon an inference. Thus, he claims his conviction in violation of R.C. 2925.03(A)(1) must be reversed.

{¶96} Whether evidence is legally sufficient to sustain a verdict is a question of law, which appellate courts review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3. On appeal we determine whether the evidence presented, viewed in a light most favorable to the prosecution, allows a rational trier of fact to find the essential elements of the crime established beyond a reasonable doubt. *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, *reconsideration denied sub nom. State v. Walker*, 160 Ohio St.3d 1517, 2020-Ohio-6946, 159 N.E.3d 1179.

{¶97} The only count Appellant challenges here is count one, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(f), a first-degree felony with a major drug offender specification and forfeiture of money specification, which provide:

> (A) No person shall knowingly do any of the following:
> * * *
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.
> * * *
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> (1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, * * * whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:
>
> * * *
>
> (f) If the amount of the drug involved equals or exceeds one hundred times the bulk amount * * *, aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall

> impose as a mandatory prison term a maximum first degree felony mandatory prison term.

R.C. 2925.03.

{¶98} Because Appellant limits his challenge in this assignment to the first count, we likewise limit our review. Appellant contends in order to convict him of count one, the jury had to stack inferences, claiming it had to infer Appellant had access to the drugs inside the camper and infer he packaged them for sale. He claims the jury could not have reached this conclusion any other way. We disagree.

{¶99} In support, Appellant relies on *State v. Cowans*, 87 Ohio St.3d 68, 78, 717 N.E.2d 298 (1999), which held in part:

> A trier of fact may not draw "[a]n inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts[.]" *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, paragraph one of the syllabus. However, "[a]n inference * * * based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in * * *." *Id.,* paragraph two of the syllabus.

The Supreme Court in *Cowans* agreed because the state relied on the victim's lack of defensive wounds to argue and allow the jury to infer her attacker used a weapon to subdue her. Then the state used a second inference, i.e., "that the BB gun found in Cowans' truck was the weapon used." *Id.* at 79.

{¶100} Here, there is no such inference stacking necessary. To the contrary, there was direct evidence Appellant had access to the camper and sold Durbin methamphetamine from that location. Appellant told Durbin to meet him at the camper. Appellant met Durbin there and escorted him inside. Further, the owner of the RV site testified Appellant paid the fee for renting the site and believed Appellant owned the camper. Moreover, pill bottles with Appellant's name on them were found in the bedroom area of the camper that also contained a large quantity of drugs. Some of the methamphetamine found inside the camper was packaged for sale in individualized baggies.

{¶101} During the video Appellant can be heard offering to sell Durbin a larger quantity at a discount, and Appellant suggests Durbin could then sell the drugs to his co-workers. Digital scales

13

> and other drug paraphernalia were also found in the camper, and during Durbin's visit, Appellant weighed the drug in front of Durbin to show him how much he was buying. (Trial Tr. 606-607.)
>
> {¶102} There was more than enough direct and circumstantial evidence presented at trial showing Appellant either owned the camper or lived there and he sold drugs from that location. Thus, the only inference the jury arguably had to make was Appellant packaged or prepared the methamphetamine in the individual baggies found in the camper for sale. This conclusion was reasonable in light of Appellant's recorded statements touting the quality and quantity of the drugs he sold. Further, Taggart testified as to the quantity or weight of each container and verified the state's exhibits one through eight and twelve each were found to contain methamphetamine. Collectively, state's exhibits one through eight were found to contain more than 400 grams of methamphetamine, a Schedule II drug. (Trial Tr. 542-543 & 547.)
>
> {¶103} Thus, Appellant's argument claiming improper stacking of inferences has no merit. When viewed in a light most favorable to the prosecution, the evidence at trial allowed the jury to find the essential elements of the crime established beyond a reasonable doubt, and as such, this assignment is overruled.

*State v. Cutlip, supra.*

Considering the totality of the evidence, the Magistrate Judge concludes the Seventh District's decision is not an unreasonable application of *Jackson v. Virginia*, which the Seventh District applied through Ohio's adoption of the *Jackson* standard in *Thompkins*.

Petitioner argues the State could have submitted more forensic evidence for analysis, citing *California v. Trombetta*, 467 U.S. 479 (1984). In *Trombetta* the defendants sought habeas corpus relief where they had been convicted of driving under the influence of alcohol because the State had not preserved the breath samples taken and tested by the Intoxilyzer machine for further possibly exculpatory testing. The Supreme Court held such preservation was not necessary. When dealing with the failure of the state to preserve evidence which could have been subjected to tests which might have exonerated the defendant, there is no due process violation unless the defendant

can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). Petitioner has not attempted to show any bad faith.

Petitioner argues the testimony of David Wise, owner of the land where the camper was parked, did not meet the standard of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), but it was not required to. Wise was offered as a lay witness, not an expert, and in any event *Daubert* is not binding on the States as a matter of constitutional law. "The Supreme Court has never held that admitting evidence of questionable reliability against a criminal defendant without holding a *Daubert* hearing or similar procedure violates due process. . . .The Supreme Court did not set a constitutional floor for the reliability of scientific evidence in *Daubert, see Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998), and screening evidence through *Daubert's* standards is not constitutionally required." *Bojaj v. Berghuis,* 2017 U.S. App. LEXIS 13474 *12-13 (6th Cir. Jul. 24, 2017)."

Petitioner's Third Ground for Relief is without merit and should be dismissed with prejudice.

**Ground Four: Judicial Invasion of the Province of the Jury by Answering their Question**

In his Fourth Ground for Relief, Petitioner asserts he was denied due process when the trial judge invaded the province of the jury by answering a question they put to him. The Seventh District agreed the judge had committed error by answering the question as he did rather than reading back the relevant testimony. It also held the error was harmless, applying the standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Respondent claims the Seventh District's decision was a not unreasonable application of

*Brecht* (Return, ECF No. 10, PageID 787). Petitioner agrees that *Brecht* is the correct standard to apply, but disagrees with the reasonableness of the decision (Reply, ECF No. 17, PageID 866-73).

In deciding that the error was harmless, the Seventh District held that by the time it asked its question, the jury has already have decided Petitioner was guilty and was trying to decide about the degree of the offense. Petitioner does not disagree with this inference and indeed emphasizes the important of the quantities in deciding what level of felony he was guilty of. The Seventh District noted that the quantities defense counsel proposed using in responding to the question were sufficient to warrant conviction on Count One as indicted. *State v. Cutlip, supra,* at ¶ 122. The record supports that finding and the consequent conclusion of harmlessness. The Seventh District's decision is therefore a reasonable application of *Brecht*.

Moreover, *Brecht* applies only to evaluation of constitutional error. In the Seventh District Petitioner argued that answering the question as the trial judge did was an abuse of discretion and that was the standard the Seventh District applied in finding there was error. But not all error is constitutional error. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). Petitioner cites no Supreme Court decision constitutionalizing a rule about answering jury questions.

Petitioner's Fourth Ground for Relief should be dismissed with prejudice.


**Ground Five: Ineffective Assistance Of Trial Counsel: Failure to File a Financial Affidavit Regarding Fines**

In his Fifth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his trial attorney did not file a financial affidavit with his motion to waive fines.

16

Respondent argues this claim is not cognizable in habeas because Petitioner is not in custody on this portion of the judgment. Petitioner concedes he cannot obtain habeas relief on this ground (Reply, ECF No. 17, PageID 873).  The Fifth Ground for Relief should therefore be dismissed with prejudice.

**Ground Six:  Denial of Rights Under the Fourth Amendment:  Search Warrant Not Based on Probable Cause**

In his Sixth Ground for Relief, Petitioner argues his conviction is based in part on evidence obtained in violation of the Fourth Amendment.  For the reasons argued by Respondent, this claim is not cognizable in habeas corpus.  *Stone v. Powell*, 428 U.S. 465 (1976); *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982).

Because Sixth Ground for Relief is not cognizable in habeas corpus, Petitioner's Motion to Supplement the Record (ECF No. 16) is DENIED.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

17

be permitted to proceed *in forma pauperis*.

September 12, 2024.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #